|  |  |  |
|---|---|---|
| | ) | |
| **PAMELA WILLIAMSON,** | ) | |
| | ) | |
| **Plaintiff**, | ) | Case No. 3:09-0514 |
| | ) | |
| **vs.** | ) | Hon. Judge Robert L. Echols |
| | ) | |
| **OCWEN LOAN SERVICING, LLC,** | ) | Magistrate Judge Joe Brown |
| **OCWEN FINANCIAL CORPORATION,** | ) | |
| **and JOHN DOES 1-10,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS

Defendants Ocwen Loan Servicing, LLC ("Ocwen") and Ocwen Financial

Corporation ("Ocwen Financial") respectfully submit this memorandum of law in support

of their motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure.

## INTRODUCTION

Except for a brief period in 2006, plaintiff has been in continuous default on her

mortgage loan since it was transferred to Ocwen for servicing in 2005.  During that time,

Ocwen went to extraordinary lengths to help plaintiff avoid foreclosure.  Ocwen granted

plaintiff numerous extensions on her monthly payment obligations.  Ocwen processed

and issued numerous reinstatement quotes.  Ocwen granted plaintiff two forbearance

agreements designed to help plaintiff become current in her loan obligations, and

modified the second forbearance agreement when plaintiff could not make the minimum

1

payments.  Ocwen even agreed to modify the terms of her actual loan agreement in an effort to help plaintiff keep her home.

If plaintiff's complaint shows anything, it is that no good deed goes unpunished. After years of accepting Ocwen's assistance – during a time when any other servicer likely would have foreclosed due to her extended delinquency – plaintiff now alleges a seven-count complaint premised on the notion that Ocwen's mortgage servicing activities were part of a racketeering enterprise that, in addition to various vaguely pled federal crimes, supposedly involved violations of state and federal consumer protection laws and breaches of plaintiff's loan agreement.  What is most extraordinary about plaintiff's complaint is that it does not actually identify any specific act she contends was unlawful. Plaintiff alleges that Ocwen charged her "unlawful fees" (Compl. ¶ 14), but gives no indication what those fees might be.  She alleges that the defendants placed "harassing telephone calls," without identifying either the specific telephone calls or what occurred on them to render them "harassing."  Plaintiff further alleges that the defendants were engaged in a "fraudulent and illegal scheme" without identifying any statements that purportedly constituted a fraud.  (*Id.*)  Plaintiff's complaint fails to state a claim upon which relief can be granted, and now must dismissed.

Plaintiff's claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* ("RICO"), fail for a host of independent reasons – including that plaintiff has failed to allege an "enterprise" that is distinct from the defendants themselves, that plaintiff's predicate-act allegations of fraud fail to conform to the pleading requirements of Fed. R. Civ. P. 9(b), and that plaintiffs' conspiracy allegations are fatally defective.  (*See* Section I *infra*.)

Plaintiff's remaining claims must be dismissed because her allegations fall woefully short of the basic pleading standards of Fed. R. Civ. P. 8 as interpreted by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). *Twombly* makes clear that a civil complaint must allege more than mere legal conclusions (such as "illegal fees, late charges, and false statement of the money due . . . ." (Compl. ¶ 10)); it must allege *facts* sufficient to raise an inference that the legal conclusions are correct. Plaintiff's failure to allege any identifiable facts would be sufficient to necessitate dismissal even in an ordinary case, but in a case where plaintiff brings federal racketeering claims as part of a strategy to try this case in the media,[1] it is even more crucial to observe the pleading standards imposed by the rules, and to dismiss cases (like this one) that have no articulable factual foundation. (*See* Section II *infra*.)

## ARGUMENT

## I. PLAINTIFF'S RICO CLAIMS FAIL AS A MATTER OF LAW.

Plaintiff's RICO allegations illustrate the folly of attempting to dress up a garden-variety mortgage foreclosure dispute in "the Emperor's trendy garb" of RICO. *Schmidt v. Fleet Bank*, 16 F. Supp. 2d 340, 346 (S.D.N.Y. 1998). Plaintiff's RICO claims are untenable, if not specious, on their merits. Plaintiff alleges that the defendants engaged in mail fraud and wire fraud but fails to identify any particular fraudulent act by any of the defendants, let alone an enterprise-wide scheme. Plaintiff has not pled a single legally cognizable injury to her "business or property" as required by Section 1964(c) of RICO. 18 U.S.C. 1964(c). And plaintiff's allegations concerning the formation of an "enterprise" consisting of Ocwen Financial, its wholly-owned subsidiary Ocwen, and the

---

[1]    *See* Sananda Sahoo, *Homeowner Sues Loan Servicer: RICO Suit Mirrors Other Cases Against Florida Company*, NASHVILLE POST, June 12, 2009.

3

employees, officers, and directors of those businesses, as well as a conspiracy among those defendants, contravene Sixth Circuit law concerning the structural requirements of RICO "enterprises." Plaintiff's attempt to use RICO as a damages-enhancing catchall claim for what is, if anything, a straightforward (if meritless) foreclosure dispute amply demonstrates why RICO is famed as one of the most often abused federal statutes. This Court should not countenance its abuse here.

### A. PLAINTIFF'S PREDICATE ACT ALLEGATIONS ARE LEGALLY INSUFFICIENT TO STATE A RICO CLAIM.

To establish a RICO claim under any of the provisions identified in the complaint, plaintiff must plead and prove at least two predicate acts of racketeering activity. *See* 18 U.S.C. § 1961(5). Plaintiff claims that the defendants engaged in a pattern of racketeering activity consisting of mail and wire fraud. (Compl. ¶ 23.) Because both of those alleged predicate acts sound in fraud, the Sixth Circuit has repeatedly held that they must be pled with sufficient particularity to satisfy Rule 9(b) of the Federal Rules of Civil Procedure. *See, e.g., Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir. 1999). To meet those requirements, a plaintiff must "at a minimum, []allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Id.*; *see also Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993).

The Sixth Circuit has elaborated upon the application of Rule 9(b)'s particularity requirement with respect to mail and wire fraud. The elements of mail and wire fraud are: (1) a scheme to defraud, and (2) use of the mails, or of an interstate electronic communication, respectively, in furtherance of the scheme. *United States v. Brown*, 147

4

F.3d 477, 483 (6th Cir. 1998). To adequately plead "a scheme to defraud," a plaintiff must allege facts providing "proof of misrepresentations or omissions which were reasonably calculated to deceive persons of ordinary prudence and comprehension. Thus, the plaintiffs must allege with particularity a false statement of fact made by the defendant which the plaintiff relied on." *Kenty v. Bank One, Columbus, N.A.*, 92 F.3d 384, 390 (6th Cir. 1996).

Plaintiff has wholly failed to meet the particularity requirements applicable to her allegations of mail and wire fraud. With respect to the time of the alleged false representations plaintiff states only that the defendants began mailing her letters in "October 2006" and placed the challenged phone calls "beginning in 2006." (Compl. ¶ 13.) Those vague allegations do not permit defendants or the Court to identify which calls allegedly involved fraudulent statements. Nor does plaintiff specify the content of any of these allegedly fraudulent communications or identify a single false statement in any of them. Indeed, with respect to her wire fraud allegations, plaintiff does not allege that any phone calls were fraudulent at all; instead, she simply asserts that they were "harassing." (*Id.*) These kinds of fact-free, conclusory predicate act allegations are insufficient as a matter of law.

The Sixth Circuit's decision in *Advocacy Organization* illustrates the point. The plaintiffs in that case sued a health insurance company, alleging a scheme to defraud that consisted of the dissemination of "irrelevant data, irrelevant fee schedules and other irrelevant cost data in conducting their retrospective review of medical billings." 176 F.3d at 323. Because the plaintiff's complaint "contain[ed] no facts supporting their allegation that these factors [were] irrelevant," the Sixth Circuit held the allegations

5

insufficient to support a RICO claim.  *Id.*  So too here: plaintiff alleges "unlawful" fees and "fraudulent and illegal" behavior, without alleging any facts to support those legal conclusions.

The Sixth Circuit in *Advocacy Organization* also found insufficient the plaintiff's mail- and wire-fraud allegation that the defendant insurance company misrepresented that fees paid by it to a medical review company are "contingent upon the amount of savings (in the form of decreased payments to health care providers) the review companies' analyses yield[] for their insurance company clientele."  *Id.* at 324.  The Sixth Circuit found this allegation insufficient to support a RICO claim, noting that "[w]hile one might infer from such a fee arrangement the ***potential*** for fraud, Plaintiffs have failed to allege any fact – other than the mere existence of this fee arrangement – from which one could infer that the insurance companies and the review companies actually participated in a scheme to defraud the Plaintiffs."  *Id.* (emphasis added).  Again, the analogy is obvious: While any fee charged by any mortgage company might potentially be problematic, plaintiff here has failed to allege any fact suggesting that these fees were in fact fraudulent.  *Advocacy Organization* holds that such predicate act allegations necessitate dismissal under Rule 12(b)(6).

The Sixth Circuit's decision in *Kenty* underscores the point.  There, the plaintiffs brought RICO claims against an auto lender based on the lender's force-placed insurance activities.  The plaintiffs' allegations in support of the alleged predicate acts of mail and wire fraud were that the lender had stated that it "may purchase limited insurance for the protection of" itself, and may "add such insurance premiums, and finance charges thereon," to the borrower's loan balance.  92 F.3d at 390-91.  The plaintiffs alleged that,

6

due to a rebate arrangement between the lender and the insurer, these statements constituted mail fraud. The Sixth Circuit disagreed, reasoning:

> Kenty has not alleged the particular false statement on which she relies in light of the factual basis of fraud alleged in the complaint. She does not explain why the amounts charged to her were not "premiums and finance charges" or how the amounts charged constitute fraud. The allegations of the complaint fail under Rule 9 to identify with particularity the statement made by the Bank in the dealings between Kenty and the bank that was untrue. Hence the misrepresentation element of fraud has not been sufficiently identified to withstand the motion to dismiss.

*Id.* at 391. That is precisely the problem here: Plaintiff alleges that Ocwen assessed "unlawful fees," but does not state what those fees are or "how the amounts charged constitute fraud." Under established Sixth Circuit law, the inadequacy of plaintiff's predicate act allegations by itself requires that plaintiffs' RICO claims be dismissed.

### B. PLAINTIFF HAS ALLEGED NO INJURY COGNIZABLE UNDER SECTIONS 1962(A) OR 1962(B).

To assert a claim under any of the RICO provisions plaintiff relies upon here, she must demonstrate an injury to her business or property proximately caused by the specific violation pled in the complaint. *See* 18 U.S.C. 1964(c); *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258 (1992). Plaintiff cannot allege any causal link between the violations alleged in the complaint and a cognizable injury, and her claims therefore must be dismissed.

For instance, Section 1962(a) prohibits "any person" who has received income for a pattern of racketeering activity from "us[ing], or invest[ing] . . .any part of such income . . . in acquisition of any interest in . . .any enterprise." 18 U.S.C. § 1962(a). The Sixth Circuit has held that to state a claim under this section, a plaintiff must allege an injury to business or property caused by the investment of the alleged racketeering

7

proceeds – an injury caused by the alleged racketeering activities themselves is insufficient. *See, e.g., Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 494 (6th Cir. 1990) (plaintiff's 1962(a) claim failed as a matter of law because plaintiff had "not alleged injuries stemming directly from the defendants' alleged use or investment of their illegally obtained income"). Because plaintiff has not alleged (and cannot allege) any injury traceable to the defendants' alleged investment or use of racketeering income, her Section 1962(a) claim must be dismissed as a matter of law.

Similarly, Section 1962(b) makes it unlawful for "any person" to acquire "any interest in or control of any enterprise" through a pattern of racketeering activity. 18 U.S.C. § 1962(b). Again, the Sixth Circuit has held that to state a claim under this section, a plaintiff must plead an injury proximately caused by the acquisition of an interest in the targeted enterprise, not simply from the alleged predicate acts. *See Advocacy Organization*, 176 F.3d at 329 (dismissing plaintiff's 1962(b) claim because the plaintiffs "fail[ed] to allege that they were injured by reason of the Defendants' acquisition or maintenance of an interest in or control of the enterprise.") Plaintiff's complaint is devoid of any allegation concerning how the defendants gained an interest in the alleged enterprise, let alone how the acquisition of that interest – as distinct from the predicate acts of alleged fraud – injured her. Plaintiff's Section 1962(b) claim thus must be dismissed.

### C. PLAINTIFF'S SECTION 1962(C) CLAIM FAILS BECAUSE HER ALLEGED "ENTERPRISE" LACKS ANY PARTICIPANT OTHER THAN THE AFFILIATED DEFENDANTS IN THIS ACTION.

To state a claim under Section 1962(c), a plaintiff must identify a defendant distinct from the "enterprise" targeted in the complaint. Rather than doing so, plaintiff has opted to name only Ocwen Financial, Ocwen, and their employees, officers, and

8

directors.  These entities do not constitute separate actors for purposes of RICO and, therefore, plaintiff's claim under Section 1962(c).  Indeed, the fact that plaintiff does not herself regard the entities as separate is demonstrated by her choice to refer to them collectively as "Ocwen" throughout her complaint.  (Compl. ¶ 2 ("Ocwen shall be referred to in the singular throughout the complaint but it shall mean any and all of the Ocwen entities.").)

Section 1962(c) makes it "unlawful for any person *employed by or associated with* any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ."  18 U.S.C. § 1962(c). The "person" alleged to have violated Section 1962(c) must be distinct from the "enterprise" whose affairs that person is allegedly conducting the enterprise's affairs because, put simply, "you cannot associate with yourself."  *McCullogh v. Suter*, 757 F.2d 142, 144 (7th Cir. 1985) (Posner, J.); *see also Puckett v. Tennessee Eastman Co.,* 889 F.2d 1481, 1489 (6th Cir. 1989).

Plaintiff fails to state a claim for the alleged violation of Section 1962(c) because activity performed by agents, officers, and employees in the scope of their employment – or by a subsidiary – cannot constitute an association in fact distinct from the enterprise. *Fitzgerald v. Chrysler Corp.*, 226 F.3d 225, 226 (7th Cir. 1997) ("Read literally, RICO would encompass every fraud case against a corporation, provided only that a pattern of fraud and some use of the mails or telecommunications to further the fraud were shown; the corporation would be the RICO person and the corporation plus its employees the 'enterprise.'  The courts have excluded this far-fetched possibility by holding that an

9

employer and its employees cannot constitute a RICO enterprise."); *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 343-44 (2d Cir. 1994) ("by alleging a RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant, the distinctiveness requirement may not be circumvented."); *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 652 (S.D.N.Y. 1996), *aff'd mem.*, 113 F.3d 1229 (2d Cir. 1997) (association in fact enterprise consisting of parent company, subsidiaries, and their employees 'ignores the required distinction between the culpable 'person' and the 'enterprise.'"). Plaintiff has made no allegation that any of the defendants is "associated with" any other defendant for the purpose of carrying on the racketeering activities alleged in the complaint and has not even bothered to distinguish among them for purposes of advancing her allegations. Accordingly, plaintiffs Section 1962(c) claim must be dismissed.

**D.** **PLAINTIFF'S SECTION 1962(D) CLAIM DEPENDS ON ALLEGATIONS OF AN INTRACORPORATE CONSPIRACY, WHICH DO NOT STATE A CLAIM AS A MATTER OF LAW.**

Plaintiff's claim under Section 1962(d) is that Ocwen, its parent company, and its employees conspired with each other to violate RICO. As a general matter of conspiracy law, a company cannot conspire with its corporate affiliates or employees. *See, e.g., Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 509 (6th Cir. 1991) ("This court has adopted the general rule in civil conspiracy cases that a corporation cannot conspire with its own agents or employees.") (quoting *Doherty v. American Motors Corp.*, 728 F.2d 334, 339 (6th Cir. 1984)); *HTC Sweden AB v. Innovatech Prods. & Equip. Corp.*, 2008 U.S. Dist. LEXIS 76690, at \*35 (E.D. Tenn. Sept. 30, 2008) ("A corporate parent cannot conspire with its wholly owned subsidiary").

10

This rule extends to alleged conspiracies under 18 U.S.C. § 1962(d).  As the Eighth

Circuit persuasively explained:

> [W]hen two entities are under common control and there is
> no distinctiveness or independence of action, an agreement
> or understanding between them [does not] create[] any of
> the special dangers § 1962(d) targets. . . . [W]e read the
> plaintiffs' allegations as essentially asserting that THORN
> EMI, plc conspired with its arms and hands. Such
> allegations are not sufficient.

*Fogie v. THORN Americas, Inc.*, 190 F.3d 889, 899 (8th Cir. 1999) (citing *United States*

*v. Computer Sciences Corp.*, 689 F.2d 1181, 1190 (4th Cir.1982)); *see also, e.g., Dist.*

*1199P Health & Plan v. Janssen, L.P.*, 2008 U.S. Dist. LEXIS 103526, at *55-56 (D.N.J.

Dec. 23, 2008) ("The majority of courts within this Circuit agree that a corporation

cannot conspire with its agents and/or employees under § 1962(d) of RICO.").[2]

Here, plaintiff alleges a conspiracy consisting exclusively of corporate affiliates

and employees.  Under established law interpreting the intracorporate conspiracy doctrine,

such allegations are insufficient as a matter of law.  Plaintiffs Section 1962(d) claim thus

must be dismissed.

## II.     PLAINTIFF'S REMAINING CLAIMS MUST BE DISMISSED BECAUSE THEY FAIL TO SATISFY MEET EVEN MINIMAL NOTICE PLEADING REQUIREMENTS.

The Supreme Court has made clear that, in order to satisfy the notice pleading

requirements embodied in Fed. R. Civ. P. 8, a complaint must allege facts sufficient to

demonstrate "a plausible entitlement to relief."  *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 555 (2007).  The Sixth Circuit has interpreted that requirement to mean that a

---

[2]     While some courts have held that this "intracorporate conspiracy" doctrine is limited to antitrust claims and does not apply in the RICO context, *see, e.g., Webster v. Omnitrition Int'l, Inc.*, 79 F.3d 776 (9th Cir. 1995), the Sixth Circuit has expressly held that the prohibition on intracorporate conspiracies is not limited to antitrust claims.  *See Hull*, 926 F.2d at 509.

complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). To satisfy the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008) (*quoting Twombly*, 559 U.S. at 555).

Plaintiff has wholly failed to meet those obligations here. Far from demonstrating a plausible entitlement to relief, plaintiff has instead relied merely on conclusory allegations and the formulaic recitation of the elements of her claims. For instance, while plaintiff purports to assert a claim under the Tennessee Consumer Protection Act ("TCPA"), plaintiff has not identified what conduct, if any, she contends violated that Act. Even assuming that the factual allegations in the complaint are meant to support that case of action, plaintiff does little more than conclusorily state that Ocwen charged "unlawful fees," made "false statements," and "asserted charges not due and owing," without giving even the slightest indication of to which fees, statements, and charges she is referring to, let alone what might possibly have rendered them "unlawful ", "false", or "not due." (Compl. ¶¶ 10, 13.) The Sixth Circuit has squarely held that allegations indistinguishable from those at issue here are insufficient to state a TCPA claim. *See MacDermid v. Discover Financial Services*, 488 F.3d 721, 733 (6th Cir. 2007) (dismissing TCPA claims because "conclusory allegation" that alleged conduct was "inherently deceptive" was "not enough to survive 12(b)(6) dismissal").

Plaintiff's breach of contract claim fares no better. While plaintiff again sets forth an assortment of vague allegations concerning purported misconduct by the defendants, and asserts that Ocwen somehow violated the implied covenant of good faith or fair dealing, plaintiff does not – and cannot – point to a single contract provision she alleges was violated or in what was the duty of good faith was somehow impinged upon. This is more than a mere pleading inadequacy; as numerous courts have held, mortgage servicers such as Ocwen are legally entitled to take reasonable actions to protect the interest of the lender in the event of default, and to charge the cost of such actions to the borrower. *See, e.g., Majchrowski v. Norwest Mortgage, Inc.,* 6 F. Supp. 2d 946, 964-66 (N.D. Ill. 1998) (mortgage servicer was contractually authorized to charge proof-of-claim fees and property inspection fees); *Scott v. Fairbanks Capital Corp.*, 284 F. Supp. 2d 880, 891 (S.D. Ohio 2003) (to same effect). Indeed, one federal district court has specifically reviewed fees assessed by Ocwen itself, and has found them to be "authorized and lawful under the loan contracts" it services. *In re Ocwen Federal Bank FSB Mortgage Servicing Litig.*, 2005 U.S. Dist. LEXIS 8274, at *8 (N.D. Ill. April 25, 2005). In light of this judicially recognized contractual authority, plaintiff must do much more than merely allege Ocwen assesses "unlawful fees" to state a contract claim on which relief can be granted.

Finally, plaintiff purports to bring a claim under the Fair Debt Collection Practices Act ("FDCPA"), but does not specify what communications she contends were false or harassing, let alone on what basis she contends those communications were false or harassing. Put simply, plaintiff's complaint leaves the defendants with no notice as to what conduct, if any, plaintiff means to challenge. In similar circumstances, courts have

13

dismissed FDCPA claims where the plaintiff's factual allegations failed to pass muster under *Twombly*. *See, e.g., Hambrick v. Wells Fargo Bank, N.A.*, 2009 U.S. Dist. LEXIS 46359 (N.D. Miss. June 2, 2009); *Hargrove v. WMC Mortgage Corp.*, 2008 U.S. Dist. LEXIS 67727, at *8 (S.D. Tex. Aug. 29, 2008) (dismissing FDCPA claim as insufficient under *Twombly* because plaintiff simply alleged mortgage company made "false, deceptive, and misleading representations" and employed "unfair and unconscionable means" to collect the loan balance). Here, plaintiff has alleged numerous adjectives – "unlawful," "harassing," and so forth – but no actual facts. Her FDCPA claims, like the rest of her complaint, thus must be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, defendants respectfully request that plaintiff's complaint be dismissed in its entirety, with prejudice.


Dated: July 6, 2009

Respectfully submitted,


*/s/ H. Lee Barfield II*

H. Lee Barfield II (#2581)
Jeffrey P. Yarbro (#24207)
Bass, Berry & Sims PLC
315 Deaderick Street, Suite 2700
Nashville, Tennessee 37238-3001
(615) 742-6202 (telephone)
(615) 742-2702 (facsimile)

*Counsel for defendants*
*Ocwen Loan Servicing, LLC and*
*Ocwen Financial Corporation*

14

## CERTIFICATE OF SERVICE

I do hereby certify I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system on this 6th day of July 2009, which will send a notice of electronic filing to the following:

G. Kline Preston, IV (#17141)
Kline Preston Law Group, P.C.
530 Church Street, Suite 202
Nashville, TN 37219
(615) 244-5220
kpreston@klinepreston.com

_/s/ Jeffrey P. Yarbro_
Jeffrey P. Yarbro

15