## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

|  |  |  |
|---|---|---|
| **PAMELA WILLIAMSON,** | ) | |
| | ) | |
| **Plaintiff**, | ) | Case No. 3:09-0514 |
| | ) | |
| **vs.** | ) | Hon. Judge Robert L. Echols |
| | ) | |
| **OCWEN LOAN SERVICING, LLC,** | ) | Magistrate Judge Joe Brown |
| **OCWEN FINANCIAL CORPORATION,** | ) | |
| **and JOHN DOES 1-10,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## <u>MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT</u>

Defendants Ocwen Loan Servicing, LLC ("Ocwen") and Ocwen Financial Corporation ("Ocwen Financial") respectfully submit this memorandum of law in support of their motion to dismiss the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## <u>INTRODUCTION</u>

Except for a brief period in 2006, plaintiff has been in continuous default on her mortgage loan since it was transferred to Ocwen for servicing in 2005. During that time, Ocwen went to extraordinary lengths to help plaintiff avoid foreclosure. Ocwen granted plaintiff numerous extensions on her monthly payment obligations. Ocwen processed and issued numerous reinstatement quotes. Ocwen granted plaintiff two forbearance agreements designed to help plaintiff become current in her loan obligations, and modified the second forbearance agreement when plaintiff could not make the minimum

1

payments.  Ocwen even agreed to modify the terms of her actual loan agreement in an effort to help plaintiff keep her home.

Illustrating the principle that no good deed goes unpunished, plaintiff filed a seven-count complaint purporting to assert not only garden variety fraud and breach of contract claims, but several claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* ("RICO") asserting that Ocwen and its parent company Ocwen Financial were involved in mail and wire fraud.  The defendants moved to dismiss the complaint on the grounds that plaintiff had failed entirely to identify any particular conduct she contended was unlawful other than to simply state that the defendants had charged her "illegal fees" and because her RICO allegations failed to state a claim as a matter of law.  Rather than respond to the defendants' motion to dismiss, plaintiff submitted an amended complaint, presumably in hopes of remedying the flaws in her initial pleading.

The allegations added in plaintiff's amended complaint actually highlight why plaintiff cannot state a claim for which relief can be granted.  To be sure, plaintiff now identifies the fees she contends "were false" (Am. Compl. ¶¶ 11-19) – but she includes in that list virtually every fee of every description that was ever assessed to her account, most of which have expressly and routinely been approved by other courts, and articulates no reason why any particular fee was allegedly improper.  Plaintiff's blunderbuss assertion that all loan-related fees are unlawful, coupled with her apparent inability to state any ground on which any particular fee was improper, only underscores why this action must be dismissed pursuant to Rule 12.  As in her initial complaint, plaintiff's amended complaint alleges that the defendants placed "hundreds of harassing

2

telephone calls," without identifying which calls are at issue or alleging facts sufficient to infer that any such calls were "harassing." (Am. Compl. ¶22.) Plaintiff further alleges that the defendants were engaged in a "fraudulent and illegal scheme" without alleging any facts from which the Court could infer fraudulent or illegal conduct. (*Id.*) Plaintiff's amended complaint, no less than her original complaint, fails to state a claim upon which relief can be granted, and now must dismissed.

Plaintiff's claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* ("RICO"), fail for a host of independent reasons – including that plaintiff has failed to allege an "enterprise" that is distinct from the defendants themselves, that plaintiff's predicate-act allegations of fraud fail to conform to the pleading requirements of Fed. R. Civ. P. 9(b), and that plaintiffs' conspiracy allegations are fatally defective. (*See* Section I *infra*.)

Plaintiff's conversion claim fails as a matter of law because it is clear from the face of her amended complaint both that Ocwen had a right in the disputed property and that she had defaulted on her mortgage loan agreement. Each of those facts independently foreclose plaintiff's conversion theory. (*See* Section II *infra*.)

Plaintiff's remaining claims must be dismissed because her allegations fall woefully short of the basic pleading standards of Fed. R. Civ. P. 8 as interpreted by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). *Twombly* makes clear that a civil complaint must allege more than mere legal conclusions (such as "illegal fees, late charges, and false statement of the money due . . . ." (Compl. ¶ 10)); it must allege *facts* sufficient to raise an inference that the legal conclusions are correct.

Plaintiff's failure to allege any identifiable facts would be sufficient to necessitate

3

dismissal even in an ordinary case, but in a case where plaintiff brings federal racketeering claims as part of a strategy to try this case in the media,[1] it is even more crucial to observe the pleading standards imposed by the rules, and to dismiss cases (like this one) that have no articulable factual foundation.  (*See* Section III *infra*.)

## ARGUMENT

### I.      PLAINTIFF'S RICO CLAIMS FAIL AS A MATTER OF LAW.

Plaintiff's RICO allegations illustrate the folly of attempting to dress up a garden-variety mortgage foreclosure dispute in "the Emperor's trendy garb" of RICO.  *Schmidt v. Fleet Bank*, 16 F. Supp. 2d 340, 346 (S.D.N.Y. 1998).  Plaintiff's RICO claims are untenable, if not specious, on their merits.  Plaintiff alleges that the defendants engaged in mail fraud and wire fraud but fails to identify any particular fraudulent act by any of the defendants, let alone an enterprise-wide scheme.  Plaintiff has not pled a single legally cognizable injury to her "business or property" as required by Section 1964(c) of RICO.  18 U.S.C. 1964(c).  And plaintiff's allegations concerning the formation of an "enterprise" consisting of Ocwen Financial, its wholly-owned subsidiary Ocwen, and the employees, officers, and directors of those businesses, as well as a conspiracy among those defendants, contravene Sixth Circuit law concerning the structural requirements of RICO "enterprises."  Plaintiff's attempt to use RICO as a damages-enhancing catchall claim for what is, if anything, a straightforward (if meritless) foreclosure dispute amply demonstrates why RICO is famed as one of the most often abused federal statutes.  This Court should not countenance its abuse here.

---

[1]     *See* Sananda Sahoo, *Homeowner Sues Loan Servicer: RICO Suit Mirrors Other Cases Against Florida Company*, NASHVILLE POST, June 12, 2009.

### A. PLAINTIFF'S PREDICATE ACT ALLEGATIONS ARE LEGALLY INSUFFICIENT TO STATE A RICO CLAIM.

To establish a RICO claim under any of the provisions identified in the complaint, plaintiff must plead and prove at least two predicate acts of racketeering activity. *See* 18 U.S.C. § 1961(5). Plaintiff claims that the defendants engaged in a pattern of racketeering activity consisting of mail and wire fraud. (Compl. ¶ 23.) Because both of those alleged predicate acts sound in fraud, the Sixth Circuit has repeatedly held that they must be pled with sufficient particularity to satisfy Rule 9(b) of the Federal Rules of Civil Procedure. *See, e.g., Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir. 1999). To meet those requirements, a plaintiff must "at a minimum . . . allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Id.*; *see also Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993).

The Sixth Circuit has elaborated upon the application of Rule 9(b)'s particularity requirement with respect to mail and wire fraud. The elements of mail and wire fraud are: (1) a scheme to defraud, and (2) use of the mails, or of an interstate electronic communication, respectively, in furtherance of the scheme. *United States v. Brown*, 147 F.3d 477, 483 (6th Cir. 1998). To adequately plead "a scheme to defraud," a plaintiff must allege facts providing "proof of misrepresentations or omissions which were reasonably calculated to deceive persons of ordinary prudence and comprehension. Thus, the plaintiffs must allege with particularity a false statement of fact made by the defendant which the plaintiff relied on." *Kenty v. Bank One, Columbus, N.A.*, 92 F.3d 384, 390 (6th Cir. 1996).

5

While plaintiff has added factual detail to her complaint -- which now provides a litany of dates, fees, charges, interest payments, past due amounts, etc -- her allegations remain patently insufficient under Rule 9 because plaintiff has failed to specify on what grounds she contends the alleged misrepresentations were false.  The mere existence of fees and charges in conjunction with the blanket allegation that they were "false" is not sufficient to satisfy Rule 9's pleading requirements.  The Sixth Circuit's decision in *Advocacy Organization* illustrates the point.  The plaintiffs in that case sued a health insurance company, alleging a scheme to defraud that consisted of the use of "irrelevant data, irrelevant fee schedules and other irrelevant cost data in conducting their retrospective review of medical billings."  176 F.3d at 323.  Although the plaintiffs attached exhibits consisting of date-stamped copies of the challenged communications, the Sixth Circuit held that the plaintiffs' allegations were insufficient to support a RICO claim because the complaint "contain[ed] no facts supporting their allegation that these factors [were] irrelevant," the Sixth Circuit held the allegations insufficient to support a RICO claim.  *Id.*  So too here: plaintiff alleges "unlawful" fees and "fraudulent and illegal" behavior, without alleging any facts to support those legal conclusions.

The Sixth Circuit in *Advocacy Organization* also found insufficient the plaintiff's mail- and wire-fraud allegation that the defendant insurance company misrepresented that fees paid by it to a medical review company are "contingent upon the amount of savings (in the form of decreased payments to health care providers) the review companies' analyses yield[] for their insurance company clientele."  *Id.* at 324.  The Sixth Circuit found this allegation insufficient to support a RICO claim, noting that "[w]hile one might infer from such a fee arrangement the *potential* for fraud, Plaintiffs have failed to allege

6

any fact – other than the mere existence of this fee arrangement – from which one could infer that the insurance companies and the review companies actually participated in a scheme to defraud the Plaintiffs." *Id.* (emphasis added). Again, the analogy is obvious: While any fee charged by any mortgage company might potentially be problematic, plaintiff here has failed to allege any fact suggesting that these fees were in fact fraudulent. *Advocacy Organization* holds that such predicate act allegations necessitate dismissal under Rule 12(b)(6).

The Sixth Circuit's decision in *Kenty* underscores the point. There, the plaintiffs brought RICO claims against an auto lender based on the lender's force-placed insurance activities. The plaintiffs' allegations in support of the alleged predicate acts of mail and wire fraud were that the lender had stated that it "may purchase limited insurance for the protection of" itself, and may "add such insurance premiums, and finance charges thereon," to the borrower's loan balance. 92 F.3d at 390-91. The plaintiffs alleged that, due to a rebate arrangement between the lender and the insurer, these statements constituted mail fraud. The Sixth Circuit disagreed, reasoning:

> Kenty has not alleged the particular false statement on which she relies in light of the factual basis of fraud alleged in the complaint. She does not explain why the amounts charged to her were not "premiums and finance charges" or how the amounts charged constitute fraud . . . . Hence the misrepresentation element of fraud has not been sufficiently identified to withstand the motion to dismiss.

*Id.* at 391. That is precisely the problem here: Plaintiff alleges that Ocwen assessed "unlawful fees," but does not state "how the amounts charged constitute fraud." Under established Sixth Circuit law, the inadequacy of plaintiff's predicate act allegations by itself requires that plaintiffs' RICO claims be dismissed.

## B. PLAINTIFF HAS ALLEGED NO INJURY COGNIZABLE UNDER SECTIONS 1962(A) OR 1962(B).

To assert a claim under any of the RICO provisions plaintiff relies upon here, she must demonstrate an injury to her business or property proximately caused by the specific violation pled in the complaint. *See* 18 U.S.C. 1964(c); *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258 (1992). Plaintiff cannot allege any causal link between the violations alleged in the complaint and a cognizable injury, and her claims therefore must be dismissed.

For instance, Section 1962(a) prohibits "any person" who has received income for a pattern of racketeering activity from "us[ing], or invest[ing] . . . any part of such income . . . in acquisition of any interest in . . .any enterprise." 18 U.S.C. § 1962(a). The Sixth Circuit has held that to state a claim under this section, a plaintiff must allege an injury to business or property caused by the investment of the alleged racketeering proceeds – an injury caused by the alleged racketeering activities themselves is insufficient. *See, e.g., Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 494 (6th Cir. 1990) (plaintiff's 1962(a) claim failed as a matter of law because plaintiff had "not alleged injuries stemming directly from the defendants' alleged use or investment of their illegally obtained income"). Because plaintiff has not alleged (and cannot allege) any injury traceable to the defendants' alleged investment or use of racketeering income, her Section 1962(a) claim must be dismissed as a matter of law.

Similarly, Section 1962(b) makes it unlawful for "any person" to acquire "any interest in or control of any enterprise" through a pattern of racketeering activity. 18 U.S.C. § 1962(b). Again, the Sixth Circuit has held that to state a claim under this section, a plaintiff must plead an injury proximately caused by the acquisition of an

8

interest in the targeted enterprise, not simply from the alleged predicate acts.  *See Advocacy Organization*, 176 F.3d at 329 (dismissing plaintiff's 1962(b) claim because the plaintiffs "fail[ed] to allege that they were injured by reason of the Defendants' acquisition or maintenance of an interest in or control of the enterprise.")  Plaintiff's complaint is devoid of any allegation concerning how the defendants gained an interest in the alleged enterprise, let alone how the acquisition of that interest – as distinct from the predicate acts of alleged fraud – injured her.  Plaintiff's Section 1962(b) claim thus must be dismissed.

**C. PLAINTIFF'S SECTION 1962(C) CLAIM FAILS BECAUSE HER ALLEGED "ENTERPRISE" LACKS ANY PARTICIPANT OTHER THAN THE AFFILIATED DEFENDANTS IN THIS ACTION.**

To state a claim under Section 1962(c), a plaintiff must identify a defendant distinct from the "enterprise" targeted in the complaint.  Rather than doing so, plaintiff has opted to name only Ocwen Financial, Ocwen, and their employees, officers, and directors.  These entities do not constitute separate actors for purposes of RICO and, therefore, plaintiff's claim under Section 1962(c).  Indeed, the fact that plaintiff does not herself regard the entities as separate is demonstrated by her choice to refer to them collectively as "Ocwen" throughout her complaint.  (*See, e.g.* Am. Compl. ¶ 2 ("The Defendant, Ocwen Loan Servicing, LLC ("Ocwen") . . . ; Am. Compl. ¶ 3 ("The Defendant, Ocwen Financial Corporation ("Ocwen") . . . . ).)

Section 1962(c) makes it "unlawful for any person *employed by or associated with* any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ."  18 U.S.C. § 1962(c).  The "person" alleged to have violated Section 1962(c) must be distinct from the

9

"enterprise" whose affairs that person is allegedly conducting the enterprise's affairs because, put simply, "you cannot associate with yourself." *McCullogh v. Suter*, 757 F.2d 142, 144 (7th Cir. 1985) (Posner, J.); *see also Puckett v. Tennessee Eastman Co.,* 889 F.2d 1481, 1489 (6th Cir. 1989).

Plaintiff fails to state a claim for the alleged violation of Section 1962(c) because activity performed by agents, officers, and employees in the scope of their employment – or by a subsidiary – cannot constitute an association in fact distinct from the enterprise. *Fitzgerald v. Chrysler Corp.*, 226 F.3d 225, 226 (7th Cir. 1997) ("Read literally, RICO would encompass every fraud case against a corporation, provided only that a pattern of fraud and some use of the mails or telecommunications to further the fraud were shown; the corporation would be the RICO person and the corporation plus its employees the 'enterprise.' The courts have excluded this far-fetched possibility by holding that an employer and its employees cannot constitute a RICO enterprise."); *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 343-44 (2d Cir. 1994) ("by alleging a RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant, the distinctiveness requirement may not be circumvented."); *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 652 (S.D.N.Y. 1996), *aff'd mem.*, 113 F.3d 1229 (2d Cir. 1997) (association in fact enterprise consisting of parent company, subsidiaries, and their employees 'ignores the required distinction between the culpable 'person' and the 'enterprise.'"). Plaintiff has made no allegation that any of the defendants is "associated with" any other defendant for the purpose of carrying on the racketeering activities alleged in the complaint and has not even bothered to distinguish among them for

10

purposes of advancing her allegations.  Accordingly, plaintiffs Section 1962(c) claim must be dismissed.

### D. PLAINTIFF'S SECTION 1962(D) CLAIM DEPENDS ON ALLEGATIONS OF AN INTRACORPORATE CONSPIRACY, WHICH DO NOT STATE A CLAIM AS A MATTER OF LAW.

Plaintiff's claim under Section 1962(d) is that Ocwen, its parent company, and its employees conspired with each other to violate RICO.  As a general matter of conspiracy law, a company cannot conspire with its corporate affiliates or employees.  *See, e.g., Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 509 (6th Cir. 1991) ("This court has adopted the general rule in civil conspiracy cases that a corporation cannot conspire with its own agents or employees.") (quoting *Doherty v. American Motors Corp.*, 728 F.2d 334, 339 (6th Cir. 1984)); *HTC Sweden AB v. Innovatech Prods. & Equip. Corp.*, 2008 U.S. Dist. LEXIS 76690, at *35 (E.D. Tenn. Sep. 30, 2008) ("A corporate parent cannot conspire with its wholly owned subsidiary").  This rule extends to alleged conspiracies under 18 U.S.C. § 1962(d).  As the Eighth Circuit persuasively explained:

> [W]hen two entities are under common control and there is no distinctiveness or independence of action, an agreement or understanding between them [does not] create[] any of the special dangers § 1962(d) targets. . . . [W]e read the plaintiffs' allegations as essentially asserting that THORN EMI, plc conspired with its arms and hands. Such allegations are not sufficient.

*Fogie v. THORN Americas, Inc.*, 190 F.3d 889, 899 (8th Cir. 1999) (citing *United States v. Computer Sciences Corp.*, 689 F.2d 1181, 1190 (4th Cir.1982)); *see also, e.g., Dist. 1199P Health & Plan v. Janssen, L.P.*, 2008 U.S. Dist. LEXIS 103526, at *55-56 (D.N.J. Dec. 23, 2008) ("The majority of courts within this Circuit agree that a corporation

cannot conspire with its agents and/or employees under § 1962(d) of RICO.").[2]

Here, plaintiff alleges a conspiracy consisting exclusively of corporate affiliates and employees. Under established law interpreting the intracorporate conspiracy doctrine, such allegations are insufficient as a matter of law. Plaintiffs Section 1962(d) claim thus must be dismissed.

## II. PLAINTIFF'S CONVERSION CLAIM FAILS AS A MATTER OF LAW.

Plaintiff contends that the defendants committed conversion by "foreclos[ing] on her property and [taking] her personal property." (Am. Compl. ¶ 31.) Under Tennessee law, conversion is "the appropriation of property to the party's own use and benefit, by the exercise of dominion over it, in defiance of plaintiff's right." *Brandt v. Bib Enterprises, Ltd.,* 986 S.W.2d 586, 595 (Tenn. Ct. App. 1998). Plaintiff's complaint fails to state a claim for conversion because plaintiff's allegations make it clear that Ocwen had a right – in the form of a security interest – in the property.

To state a claim for conversion, plaintiff must demonstrate that Ocwen's conduct was wrongful, i.e. that Ocwen had no rights in the property that is the subject of the alleged conversion. *See Brandt*, 986 S.W. 2d at 595; *see also* 89 C.J.S. Trover & Conversion s 3, p. 533 ("[In]n the nature of things [conversion] cannot spring from the exercise of a legal right."); *INB Banking Co. v. Iron Peddlers, Inc.*, 993 F.2d 1291, 1293 (7th Cir.1993) ("To establish a claim for conversion, therefore, a plaintiff must establish that it had ownership of the property and that the defendant's possession was without right."); *Wade v. Ford Motor Credit Co.*, 455 F.Supp. 147, 150 (E.D. Mo. 1978)

---

[2] While some courts have held that this "intracorporate conspiracy" doctrine is limited to antitrust claims and does not apply in the RICO context, *see, e.g., Webster v. Omnitrition Int'l, Inc.*, 79 F.3d 776 (9th Cir. 1995), the Sixth Circuit has expressly held that the prohibition on intracorporate conspiracies is not limited to antitrust claims. *See Hull*, 926 F.2d at 509.

(dismissing conversion claim against lender where lender had a right to possession of automobile pursuant to loan agreement). Plaintiff's complaint demonstrates just the opposite: Ocwen has a security interest in plaintiff's property pursuant to plaintiff's mortgage loan agreement. (*See* Am. Compl. ¶¶ 1-2).

Under Tennessee law, "a mortgage vests the mortgagee with the legal title to the land and the right to immediate possession." *Te-Two Real Estate Ltd. Partnership v. Creekstone Apartments Assocs., L.P.*, 1995 U.S. Dist. LEXIS 14876, at *23 (M.D. Tenn. Sep. 18, 1995) (citing *Howell v. Tomlinson*, 33 Tenn. App. 1, 228 S.W.3d 112, 116 (1949)). Tennessee courts have thus consistently recognized that lenders have a right in the collateral securing a loan that is itself sufficient to support a claim of conversion in the event that a borrower impairs that interest in a way not authorized by the loan agreement even when the borrower is in possession of the collateral. *Id*. at * 24; *see also Mammoth Cave Prod. Credit Ass'n v. Oldham*, 569 S.W.2d 833, 837 (Tenn. Ct. App. 1977); *First Tennessee Prod. Credit Ass'n v. Gold Kist, Inc.*, 653 S.W.2d 418, 422 (Tenn. Ct. App. 1983). Because Ocwen had rights in the disputed property, plaintiff's claim for conversion fails as a matter of law.

Moreover, plaintiff's complaint demonstrates not only that Ocwen had rights in the plaintiff's property but also that plaintiff was in breach of her mortgage loan agreement. Tellingly, plaintiff's complaint is devoid of any allegation that she was current on her mortgage or that Ocwen did not have the right to initiate the foreclosure proceedings under the terms of her mortgage agreement. Instead, plaintiff's own allegations demonstrate both that she had been late on her payments in 2006 and 2009 and that, according to Ocwen's records she was thousands of dollars in arrears when the

foreclosure proceedings were initiated in March 2009.  (*See* Am. Compl. ¶ 9 (noting that she accrued late charges in 2006 and 2009), ¶¶ 17, 18 (statements reflecting arrearages exceeding $2,000).)  In fact, the March 17, 2009 statement annexed to plaintiff's amended complaint reflects overdue principal and interest in the amount of $5,032.80. (Am. Compl. ¶ 17.)  Because plaintiff cannot demonstrate that the foreclosure proceedings interfered with any right to the property, her conversion claim fails on this second, independent ground.  *Brandt*, 986 S.W.2d at 595

III.    **PLAINTIFF'S REMAINING CLAIMS MUST BE DISMISSED BECAUSE THEY FAIL TO SATISFY MEET EVEN MINIMAL PLEADING REQUIREMENTS.**

A.      **PLAINTIFF'S TENNESSEE CONSUMER PROTECTION ACT CLAIM FAILS TO SATISFY THE PLEADING STANDARDS SET FORTH IN RULE 9 OF THE FEDERAL RULES OF CIVIL PROCEDURE.**

Like plaintiff's mail and wire fraud allegations, the allegations supporting plaintiff's claim under the Tennessee Consumer Protect Act ("TCPA") fail to satisfy the heightened pleading requirements set forth under Rule 9 of the Federal Rules of Civil Procedure.  Because TCPA claims are premised on alleged misrepresentations and, therefore, sound in fraud, the heightened pleading standards set forth in Rule 9 apply to this claim.  *See Metro. Property & Cas. Ins. Co. v. Bell,* No. 04-5965, 2005 WL 1993446, at \*5 (6th Cir. Aug. 17, 2005); *McKee Foods Corp. v. Pitney Bowes, Inc*. 2007 WL 896153, at \*5 (E.D. Tenn. Mar. 22, 2007) ("Plaintiff's claims under the TCPA are subject to Rule 9(b)'s specific pleading requirements.")

For the reasons discussed with respect to plaintiff's RICO claims, the allegations in the amended complaint manifestly fail to satisfy Rule 9's pleading requirements as interpreted by the Sixth Circuit.  (*See* Section I.A *supra.*)  In addition to her failure to meet threshold pleading requirements with respect to the fees and charges she listed in

the opening paragraphs of her amended complaint, plaintiff has asserted little more than legal conclusions specifically supporting her TCPA claim – such as that the defendants "misrepresent[ed] the fees due" and collected "fees which [were] not contractually due" – again without giving any indication as to why she contends the fees were improper or even to which of the litany of fees she is referring. (Am. Compl. ¶ 53.) The Sixth Circuit has squarely held that allegations indistinguishable from those at issue here are insufficient to state a TCPA claim. *See MacDermid v. Discover Financial Services*, 488 F.3d 721, 733 (6th Cir. 2007) (dismissing TCPA claims because "conclusory allegation" that alleged conduct was "inherently deceptive" was "not enough to survive 12(b)(6) dismissal"); *see also Scraggs v. La Petite Academy, Inc.*, 2006 WL 2711689 (E.D. Tenn. Sep. 21, 2006) (dismissing TCPA claim under Rule 9 because "there are no facts indicating how the alleged misrepresentation of defendant was deceptive and/or unfair.").

### B. PLAINTIFF'S REMAINING CLAIMS FAIL TO SATISFY RULE 8 OF THE FEDERAL RULES OF CIVIL PROCEDURE.

The Supreme Court has made clear that, in order to satisfy the notice pleading requirements embodied in Fed. R. Civ. P. 8, a complaint must allege facts sufficient to demonstrate "a plausible entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Sixth Circuit has interpreted that requirement to mean that a complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). To satisfy the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to

15

relief above the speculative level . . . ." *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008) (*quoting Twombly*, 559 U.S. at 555). The Supreme Court recently amplified its holding in *Twombly* in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (U.S. 2009). There, in the course of ordering the dismissal of a complaint for failure to satisfy Rule 8, the Supreme Court reiterated that it is not sufficient to merely allege facts merely "consistent with" the claimed misconduct. *Id.* at 1951. In those circumstances, the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" and "the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.*

Plaintiff has wholly failed to meet those obligations here. Far from demonstrating a plausible entitlement to relief, plaintiff has instead relied merely on conclusory allegations and the formulaic recitation of the elements of her claims. With respect to plaintiff's putative breach of contract claim, while plaintiff again sets forth an assortment of vague allegations concerning purported misconduct by the defendants, and asserts that Ocwen somehow violated the implied covenant of good faith or fair dealing, plaintiff does not – and cannot – point to a single contract provision she alleges was violated or in what was the duty of good faith was somehow impinged upon. This is more than a mere pleading inadequacy; as numerous courts have held, mortgage servicers such as Ocwen are legally entitled to take reasonable actions to protect the interest of the lender in the event of default, and to charge the cost of such actions to the borrower. *See, e.g., Majchrowski v. Norwest Mortgage, Inc.,* 6 F. Supp. 2d 946, 964-66 (N.D. Ill. 1998) (mortgage servicer was contractually authorized to charge proof-of-claim fees and property inspection fees); *Scott v. Fairbanks Capital Corp.*, 284 F. Supp. 2d 880, 891

16

(S.D. Ohio 2003) (to same effect). Indeed, one federal district court has specifically reviewed fees assessed by Ocwen itself, and has found them to be "authorized and lawful under the loan contracts" it services. *In re Ocwen Federal Bank FSB Mortgage Servicing Litig.*, 2005 U.S. Dist. LEXIS 8274, at \*8 (N.D. Ill. Apr. 25, 2005). In light of this judicially recognized contractual authority, plaintiff must do much more than merely list fees and allege they were "false" or "unlawful" to state a contract claim on which relief can be granted.

Plaintiff also purports to bring a claim under the Fair Debt Collection Practices Act ("FDCPA"), but does not specify what communications she contends were false or harassing, let alone on what basis she contends those communications were false or harassing. Put simply, plaintiff's complaint leaves the defendants with no notice as to what conduct, if any, plaintiff means to challenge. In similar circumstances, courts have dismissed FDCPA claims where the plaintiff's factual allegations failed to pass muster under *Twombly*. *See, e.g., Hambrick v. Wells Fargo Bank, N.A.*, 2009 U.S. Dist. LEXIS 46359 (N.D. Miss. June 2, 2009); *Hargrove v. WMC Mortgage Corp.*, 2008 U.S. Dist. LEXIS 67727, at \*8 (S.D. Tex. Aug. 29, 2008) (dismissing FDCPA claim as insufficient under *Twombly* because plaintiff simply alleged mortgage company made "false, deceptive, and misleading representations" and employed "unfair and unconscionable means" to collect the loan balance). Here, plaintiff has alleged numerous adjectives – "unlawful," "harassing," and so forth – but no actual facts. Her FDCPA claims, like the rest of her complaint, thus must be dismissed.

17

## **CONCLUSION**

For the foregoing reasons, defendants respectfully request that plaintiff's complaint be dismissed in its entirety, with prejudice.

Dated: August 24, 2009            Respectfully submitted,

          */s/ H. Lee Barfield II*
          H. Lee Barfield II (#2581)
          Jeffrey P. Yarbro (#24207)
          Bass, Berry & Sims PLC
          315 Deaderick Street, Suite 2700
          Nashville, Tennessee 37238-3001
          (615) 742-6202 (telephone)
          (615) 742-2702 (facsimile)

          *Counsel for defendants*
          *Ocwen Loan Servicing, LLC and*
          *Ocwen Financial Corporation*

18

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system on this 24th day of August 2009, which will send a notice of electronic filing to the following:

G. Kline Preston, IV (#17141)
Kline Preston Law Group, P.C.
530 Church Street, Suite 202
Nashville, TN 37219
(615) 244-5220
kpreston@klinepreston.com


*/s/ Jeffrey P. Yarbro*
Jeffrey P. Yarbro

Case 3:09-cv-00514    Document 15    Filed 08/24/09    Page 19 of 19 PageID #: 159