## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **PAMELA WILLIAMSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 3:09-0514** |
| **v.** | ) | **JUDGE ECHOLS** |
| | ) | |
| **OCWEN LOAN SERVICING, LLC,** | ) | |
| **OCWEN FINANCIAL CORPORATION,** | ) | |
| **and JOHN DOES 1-10,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM

Defendants Ocwen Loan Servicing, LLC, its parent corporation, Ocwen Financial Corporation (collectively "Ocwen"), and John Does 1-10, who are alleged to be the employees, officers and directors of the other named Defendants, filed a Motion to Dismiss Plaintiff's Amended Complaint (Docket Entry No. 14) under Federal Rule of Civil Procedure 12(b)(6), to which Plaintiff Pamela Williamson ("Plaintiff") filed a response in opposition (Docket Entry No. 17), and Defendants filed a reply (Docket Entry No. 20).

In her First Amended Complaint, Plaintiff brought four separate counts under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(a) - (d), one count under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, and one count each on the state-law claims for violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-104(a), breach of contract, and conversion of property. The pertinent facts alleged in the First Amended Complaint will be discussed below in connection with each separate claim.

## I. STANDARD OF REVIEW

In ruling on a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true the allegations made in the Plaintiff's claim and

1

construe the allegations in the Plaintiff's favor. However, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, — U.S. —, 129 S.Ct. 1937, 1949 (2009)(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 550 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

## II. ANALYSIS

**A. RICO claims**

Title 18 U.S.C. § 1964(c) provides in relevant part:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee[.]"

Title 18 U.S.C. § 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." "The term 'racketeering activity' is defined to include a host of so-called predicate acts, including 'any act which is indictable'" under 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 (wire fraud). See Bridge v. Phoenix Bond & Indem. Co., — U.S. —, 128 S.Ct. 2131, 2138 (2008). The elements of mail and wire fraud are: (1) a scheme to defraud, and (2) use of the mails, or of an interstate electronic communication, in furtherance of the scheme. Advocacy Org. for Patients and Providers v. Auto Club Ins. Ass'n, 176 F.3d 315, 322 (6th Cir. 1999). According to the Sixth Circuit:

> A scheme to defraud consists of "[i]ntentional fraud, consisting in deception intentionally practiced to induce another to part with property or to surrender some legal right, and which accomplishes the designed end." . . . To allege intentional fraud, there must be "proof of misrepresentations or omissions which were

2

'reasonably calculated to deceive persons of ordinary     prudence and comprehension.'"

Kenty v. Bank One, Columbus, N.A., 92 F.3d 384, 389-390 (6th Cir. 1996).  False statements or omissions must be alleged with particularity.  Id. at 390.  Defendants identify four reasons why they believe Plaintiff's RICO claims fail to state a claim under Rule 12(b)(6).

*1. Defendants assert that Plaintiff's predicate act allegations are legally insufficient*

Defendants first contend that Plaintiff has not alleged fraud with particularity under Federal Rule of Civil Procedure 9(b).  To establish a RICO claim, Plaintiff must plead and prove at least two predicate acts of racketeering activity.  See 18 U.S.C. § 1961(5).  Because Plaintiff alleges that the Defendants engaged in a pattern of racketeering activity consisting of mail and wire fraud, Plaintiff is required to plead the acts of fraud with sufficient particularity to meet the standard of Rule 9(b).  See Advocacy Org. for Patients and Providers, 176 F.3d at 322.  The Sixth Circuit reads Rule 9(b)'s requirement liberally to require the Plaintiff, at a minimum to allege the time, place and content of the alleged misrepresentation; the fraudulent scheme, the fraudulent intent of the Defendants, and the injury resulting from the fraud.  See id.  While this liberal reading stems from the influence of Rule 8,which requires a short and plain statement of the claim and simple, concise, and direct allegations, Rule 9(b) requires that allegations of fraud must be made with sufficient particularity and with sufficient factual basis to support an inference that the statements were knowingly made. Id.

Defendants point out that, in her First Amended Complaint, Plaintiff added factual detail to her claims in the form of account statement dates, fees and other charges, interest payments, and past due amounts assessed against her, among other things, but her allegations remain insufficient under Rule 9(b) because Plaintiff failed to specify on what grounds she contends the alleged misrepresentations were false.  Defendants argue that the mere existence of fees and charges

3

imposed in connection with the servicing of Plaintiff's mortgage loan, along with a blanket allegation that the fees were "false," is not enough to comply with Rule 9(b).

The Court agrees that statements in Plaintiff's First Amended Complaint which simply label a statement of account Plaintiff received from the Defendants as "false" does not reveal whether Plaintiff alleges that the account statement was inaccurate due to Defendants' negligence or whether Plaintiff claims the statement was false due to Defendants' fraud. When the allegations of the First Amended Complaint are read together, it becomes clear that Plaintiff alleges intentional fraud on the part of the Defendants, and that such fraud was perpetrated through "at least ten letters each month beginning in October 2006 and hundreds of harassing telephone calls each month beginning in 2006 using the United States mails and wires in furtherance of their scheme to defraud and extort the Plaintiff[.]" (First Amended Complaint ¶ 22.) Plaintiff alleges that she "continued to make her monthly payments . . . and Defendant, Ocwen, continued to create false accounts and false assessment of her payments" (Id. ¶ 21); "Defendant, Ocwen, used the United States mails and wires in furtherance of its fraudulent and illegal scheme" (Id. ¶ 22); "Defendant, Ocwen, charged unlawful fees to Plaintiff . . . misapplied [Plaintiff's] payments, and asserted charges not due and owing" (Id. ¶ 23); "Defendant, Ocwen, assessed fraudulent charges" (Id. ¶ 23); "Defendant . . . concealed the true status of her property and . . . did so with the present intention to defraud the Plaintiff of the property" (Id. ¶ 26); "Defendant, Ocwen, purposely and fraudulently orchestrated the foreclosure to convert the Plaintiff's interest in the property to its own benefit by, for and through an improper purpose" (Id. ¶ 27); "Plaintiff avers that the Defendants wrongfully and unlawfully converted her property to their own use and benefit" (Id. ¶ 31); and "The amounts alleged to have been due were not in fact due per the express terms of the contract with Ocwen." (Id. ¶ 31.)

While these allegations confirm that Plaintiff alleges intentional, not negligent, conduct of the Defendants, the allegations are far too nebulous to satisfy Rule 9(b)'s requirement that fraud be

4

alleged with particularity.  See Advocacy Org. for Patients and Providers, 176 F.3d at 324 (holding Rule 9(b)'s standard was not met where plaintiffs failed to allege any fact, other than the mere existence of a fee arrangement, from which one could infer that the defendants participated in a scheme to defraud the plaintiffs); Kenty, 92 F.3d at 391 (holding plaintiff did not explain why the amounts charged to her were not "premiums and finance charges" or how the amounts charged constituted fraud, resulting in dismissal of her complaint); Craighead v. E.F. Hutton & Co., 899 F.2d 485, 491 (6th Cir. 1990) (holding allegation of excessive trading "to be a model of a generalized, conclusory allegation that lacks the particularity necessary to plead fraud).  Plaintiff includes in her First Amended Complaint excerpts of certain account statements she received from Defendants, but she does not specify what, in particular, made each of the account statements fraudulent.  Defendants cannot discern from Plaintiff's pleading whether they are accused of creating and charging fees or other payments that were not allowed by law or Plaintiff's mortgage agreements, or whether Defendants simply miscalculated applicable figures and sent erroneous account statements to the Plaintiff.  While Plaintiff may have met the time and place requirements for pleading fraud under Rule 9(b), she has not sufficiently plead the content of the fraudulent misrepresentations made to her by the Defendants.  See Advocacy Org. for Patients and Providers, 176 F.3d at 322.  Therefore, Plaintiff's RICO claims are subject to dismissal for failure to plead fraud with particularity.

   *2. Defendants assert that Plaintiff failed to allege injury cognizable under sections 1962(a) & (b)*

   The Court also agrees with Defendants that, in addition to failing to plead fraud with particularity, Plaintiff's RICO claims under § 1962(a) & (b) must be dismissed for another reason. Section 1962(a) prohibits "any person" who has received any income derived from a pattern of racketeering activity or through collection of an unlawful debt from using or investing any part of the income or proceeds from such income in acquisition of any interest in or the establishment or operation of any enterprise.  Section 1962(b) makes it unlawful for "any person through a pattern

5

of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

The Sixth Circuit has held that, to state a claim under § 1962(a), a plaintiff must allege an injury to business or property caused by the investment of the alleged racketeering proceeds; an injury caused by the alleged racketeering activities themselves is insufficient. Craighead, 899 F.2d at 494. Similarly, the Sixth Circuit has held that, to state a claim under § 1962(b), a plaintiff must plead an injury proximately caused by the acquisition of an interest in the targeted enterprise, not an injury from the alleged predicate acts. Advocacy Org. for Patients and Providers, 176 F.3d at 329. Plaintiff's First Amended Complaint is devoid of any allegations concerning an injury she suffered that was proximately caused by Defendants' investment of the alleged racketeering proceeds in the enterprise or by Defendants' acquisition of an interest in the targeted enterprise, as contemplated by §§ 1962(a) & (b). Plaintiff's alleged injury is the loss of her home and personal property, which is injury she alleges was directly caused by the alleged racketeering activities of mail and wire fraud. See Craighead, 899 F.2d at 494. Therefore, Defendants' motion to dismiss these claims will be granted.

*3. Defendants contend Plaintiff's section 1962(c) claim fails because the alleged "enterprise" lacks any participant other than the affiliated defendants*

Section 1962(c) requires Plaintiff to identify separate entities serving as the "enterprise" and the "person." This statutory section "precludes the 'person' conducting or participating in an enterprise's affairs from simultaneously serving as the 'enterprise.'" Puckett v. Tennessee Eastman Co., 889 F.2d 1481, 1488-1489 (6th Cir. 1989).

Plaintiff named as Defendants two Ocwen corporations, a parent company and its subsidiary, and "John Does 1-10" who are alleged to be the "employees, officers and directors of the other named Defendants and/or other Ocwen entities and their employees, officers and directors who have

6

participated in, planned, conspired, supervised, and assisted the named 'enterprise' defendants in

violating the RICO statute." (First Amended Complaint ¶ 4.) While Plaintiff initially alleged that

the John Doe 1-10 Defendants "are 'persons' within the meaning of 18 U.S.C.A. § 1961 <u>et. seq.</u>"

(<u>id.</u>), her allegations in Count One asserting the § 1962(c) claim dropped this distinction and alleged

instead that the John Doe 1-10 Defendants were an "enterprise." In Count One Plaintiff alleged in

pertinent part (emphasis added):

> 34. The Plaintiff avers that, at all relevant times, the Defendants, Ocwen Loan
> Servicing, LLC, Ocwen Financial Corporation, and others yet unnamed John Does,
> <u>each constituted an "enterprise"</u> within the meaning of 18 U.S.C. § 1961(4) and
> § 1962(c) in that they were corporations or other juridical entities.
>
> 35. The Plaintiff avers that the Defendants, Ocwen Loan Servicing, LLC, Ocwen
> Financial Corporation, and John Does 1-10 conducted, participated in, engaged in,
> conspired to engage in and/or aided and abetted, the conduct of the affairs of the
> enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C.
> § 1961(1), § 1961(5), and § 1962(c).

Thus, Plaintiff has alleged that each of the named Defendants constituted an "enterprise," but

Plaintiff has not alleged the participation of a separate "person." <u>See</u> <u>Puckett</u>, 889 F.2d at 1488-

1489; <u>Begala v. PNC Bank</u>, 214 F.3d 776, 781 (6th Cir. 2000); <u>Foundation for Moral Law, Inc. v.</u>

<u>Infocision Mgt. Corp.</u>, 2008 WL 5725627 at *13 (N.D. Ohio May 27, 2008). In <u>Cedric Kushner</u>

<u>Promotions, Ltd. v. King</u>, 533 U.S. 158, 163-165 (2001), the Supreme Court suggested that a

corporate employee, acting within or beyond the scope of employment, could serve as the "person"

distinct from a corporation itself for purposes of § 1962(c), but in this case Plaintiff alleged that the

corporate employees, officers and directors served as an "enterprise," not as "persons." Even if

Plaintiff were attempting to establish the existence of an association-in-fact enterprise, Plaintiff

failed to allege that the associated persons formed an ongoing organization that functioned as a

continuing unit and was separate from the pattern of racketeering activity in which it engaged. <u>See</u>

<u>City of Cleveland v. Woodhill Supply, Inc.</u>, 403 F.Supp.2d 631, 635 (N.D. Ohio 2005). For these

reasons, Plaintiff fails to state a claim, and her claim under § 1962(c) will be dismissed.

7

*4. Defendants contend Plaintiff's section 1962(d) claim depends on allegations of intracorporate conspiracy*

Plaintiff's claim under § 1962(d) is that the parent company, its subsidiary, and its corporate employees conspired with one another to violate RICO.  As a general matter of conspiracy law, a company cannot conspire with its corporate affiliates or employees.  See Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ., 926 F.2d 505, 509 (6th Cir. 1991).  The Eighth Circuit extended this rule to alleged conspiracies under § 1962(d) and held that a parent corporation could not conspire with "its arms and hands."[1]  Fogie v. Thorn Americas, Inc., 190 F.3d 889, 898 (8th Cir. 1999).  Further, a conspiracy count under § 1962(d) cannot stand where the other RICO counts are dismissed.  Craighead, 899 F.2d at 495.  The Court concludes that Plaintiff's conspiracy claim must be dismissed for failure to state a claim.

**B.  Plaintiff's FDCPA claim**

Defendants move to dismiss Plaintiff's FDCPA claim on the ground that Plaintiff did not specifically allege what communications she contends were false or harassing, or on what basis she contends those communications were false or harassing.  Defendants rely on Hambrick v. Wells Fargo Bank, N.A., 2009 WL 1532676 at *1 (N.D. Miss. June 2, 2009), and Hargrove v. WMC Mortgage Corp., 2008 WL 4056292 at *3 (S.D. Tex. Aug. 29, 2008), cases in which the district courts dismissed FDCPA claims for failure to plead sufficient facts to raise the right to relief above the speculative level under Twombly.  The Court finds that Hambrick and Hargrove are distinguishable on their facts.

---

[1]The Court recognizes there is contrary authority, see Ashland Oil, Inc. v. Arnett, 875 F.2d 1271 (7th Cir. 1989) (holding RICO conspiracy may consist of parent and wholly owned subsidiary); Webster v. Omnitrition Int'l, Inc., 79 F.3d 776, 787 (9th Cir.), cert. denied, 519 U.S. 865 (1996) (same), but the Court chooses to follow the reasoning of the Eighth Circuit as it is most closely aligned with the Sixth Circuit law of conspiracy.

8

Title 15 U.S.C. § 1692d prohibits a debt collector from engaging in "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." Among the prohibited acts are "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." Title 15 U.S.C. § 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." Prohibited conduct includes false representations concerning the character, amount or legal status of any debt, or any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt. Id.

Plaintiff alleges that Defendants "used false and deceptive means of collecting its debts against the Plaintiff." (First Amended Complaint ¶ 60.) Plaintiff also alleges that the "Defendant Ocwen has used the false and deceptive means by falsifying the amounts paid and owed, interest accrued, and other fees alleged to be due it while using harassing telephone calls and sending harassing written communications through the United States mails to effect its scheme. The Defendants' actions have been continuous and constant since 2006 and she has relied upon false statements as to money due and payable as well as other fees and expenses." (Id.) Plaintiff also alleges that Defendants sent her "at least ten letters each month beginning in October 2006 and [made] hundreds of harassing telephone calls each month beginning in 2006[.]" (Id. ¶ 22.)

Accepting the allegations of the First Amended Complaint as true, the Court concludes that Plaintiff has alleged sufficient facts to proceed on her FDCPA claim. See Gutierrez v. Ocwen Loan Servicing, LLC, 2009 WL 426606 at *4 (E.D. Cal. Feb. 20, 2009) (permitting FDCPA claim to proceed on similar allegations). Defendants do not contend that they are not debt collectors within the meaning of the FDCPA, which might have resulted in a dismissal for failure to state a claim. See Bridge v. Ocwen Federal Bank, 2009 WL 2781103 at **4-5 (N.D. Ohio 2009).

9

### C. Plaintiff's state-law claims

#### 1. TCPA claim

Plaintiff's TCPA claim must be dismissed for the same reason the RICO claims are dismissed: Plaintiff did not plead misrepresentation or fraud with the requisite particularity. Harvey v. Ford Motor Credit Co., 8 S.W.3d 274, 275 (Tenn. Ct. App. 1999); Metropolitan Property & Cas. Ins. Co. v. Bell, 2005 WL 1993446 at *5 (6th Cir. Aug. 17, 2005). Consequently, this claim will be dismissed for failure to state a claim.

#### 2. Breach of contract claim

To state a claim for breach of contract under Tennessee law, a plaintiff must allege: (1) the existence of an enforceable contract, (2) nonperformance of the contract amounting to a breach of the contract; and (3) damages caused by the breach. Life Care Ctrs. of Am., Inc. v. Charles Town Assocs., Ltd., 79 F.3d 496, 514 (6th Cir. 1996) (applying Tennessee law); C & W Asset Acquisition, LLC v. Oggs, 230 S.W.3d 671, 676-677 (Tenn. Ct. App. 2007). Plaintiff alleges that Defendants violated the mortgage contract through false accountings and failure to timely credit her payments. Plaintiff also alleges that Defendants breached the implied covenant of good faith and fair dealing.

Defendants contend that mortgage servicers are legally entitled to take reasonable actions to protect the interest of the lender in the event of default and to charge the costs of such action to the borrower. While that may be so and could be shown on motion for summary judgment, the Court does not have before it on the motion to dismiss the contract(s) at issue or a comprehensive recitation of the applicable facts. The Court must take as true the allegations in the First Amended Complaint, and the Court concludes that Plaintiff has alleged sufficient facts to proceed on the breach of contract claim.

10

### 3. *Conversion claim*

Conversion is the appropriation of property to the party's own use and benefit, by the exercise of dominion over it, in defiance of plaintiff's right. <u>Brandt v. Bib Enter., Ltd.</u>, 986 S.W.2d 586, 595 (Tenn. Ct. App. 1998). Defendants contend that they had a legal right to foreclose on Plaintiff's real property, but again, the contracts are not before the Court for review at this time. Additionally, Plaintiff contends that Defendants converted her personal property that was stored at the residence, and Defendants did not address this claim. Thus, Defendants' motion to dismiss the conversion claim will be denied.

## III. CONCLUSION

For all of the reasons stated, Plaintiff failed to allege misrepresentation or fraud with sufficient particularity to state claims under RICO and the TCPA; however, Plaintiff's allegations under the FDCPA and for breach of contract and conversion are sufficient and those claims will proceed. Therefore, Defendants' Motion To Dismiss Plaintiff's Amended Complaint (Docket Entry No. 14) will be granted in part and denied in part.

An appropriate Order will be entered.

 

ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE

11